## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>SHAPEWAYS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 7<br><br>Case No. 24-11488 (BLS)<br><br>Jointly Administered |

## FLEXTRONICS AUTOMOTIVE USA, INC.'S
## NOTICE OF INTENT TO ASSERT SETOFF RIGHTS

Flextronics Automotive USA, Inc. ("**Flex**"), by its undersigned counsel, hereby files this notice (the "**Setoff Assertion Notice**") of intent to assert and preserve its right to setoff its Flex Account Payable (as defined below) against its Flex Damage Claim (as defined below) filed against Linear Mold & Engineering, LLC (the "**Debtor**"), a debtor in the jointly administered cases of Shapeways, Inc., et al., Case Number 24-11488 (BLS), Jointly Administered (the "**Bankruptcy Case**").

In support hereof, Flex respectfully states as follows:

## BACKGROUND

### Basis of Mutual Claims of the Debtor and of Flex Subject to Setoff

1.    Flex operates as a designer and manufacturer of electronic products, including solenoids and wiring harness products, modules and sub-systems, that it sells to Original Equipment Manufacturers and their suppliers.

---

[1]    The Debtors in these chapter 11 cases are Shapeways, Inc., Shapeways Holdings, Inc., and Linear Mold & Engineering, LLC.

2.      From time-to-time prior to the Debtor's commencement of its Bankruptcy

Case, Flex purchased various finished goods (and related services) from the Debtor on open

account. As of the Debtor's Petition Date, Flex had an account payable balance of $17,522.26

owing to the Debtor, the invoices for which aggregate account payable balance are listed on

**Exhibit A** annexed hereto (the "**Flex Account Payable**").

3.      Furthermore, from time-to-time prior to the Debtor's Petition Date, Flex

purchased from the Debtor and fully paid the Debtor for items of tooling and assembly, inspection

and related equipment manufactured and/or supplied by the Debtor.

4.      As of the Debtor's Petition Date, the Debtor was in possession of specific

items of such tooling and other equipment that, prior to the Petition Date, had been purchased by

Flex from the Debtor and paid for, and are therefore owned by Flex.

5.      In accordance with the *Order (A) Approving Procedures for Return of*

*Property Owned by Third Parties, and (B) Granting Related Relief* entered July 24, 2024 [Docket

No. 30] in the Bankruptcy Case, Flex timely sent written demand dated August 15, 2024 to the

Debtor's Trustee (the "**Equipment Return Demand**"), demanding the Debtor's release and return

of the specific items of tooling and other equipment in the Debtor's possession that Flex had

purchased and fully paid for, which items of equipment are identified in the attachments to such

Equipment Return Demand (such equipment, collectively, the "**Flex-Owned Equipment**").

6.      Subsequent to delivering its Equipment Return Demand, Flex obtained

possession of a portion of its Flex-Owned Equipment. However, the Debtor is unable to locate

and therefore Flex cannot obtain possession of certain items of Flex-Owned Equipment identified

on **Exhibit B** annexed hereto, with an aggregate value of $62,700.00 (collectively, the "**Missing**

2

**Flex-Owned Equipment**"). At all pertinent times prior to its Petition Date, the Debtor was in possession and control of the Missing Flex-Owned Equipment.

7.      Flex timely filed its Proof of Claim against the Debtor in the Bankruptcy Case, asserting its claim for $62,700.00 in damages incurred based on the Debtor's failure to locate and return the Missing Flex-Owned Equipment (such claim, the "**Flex Damage Claim**"). Flex's Proof of Claim for its Flex Damage Claim reserves Flex's setoff rights.

## NOTICE OF INTENT TO ASSERT SETOFF

8.      Section 553 of the Bankruptcy Code preserves, and does not impair, Flex's rights under applicable law to setoff a mutual debt owing by Flex to the Debtor (ie., the Flex Account Payable), against Flex's claim against the Debtor (ie., the Flex Damage Claim), except as otherwise provided in Sections 362, 363 and 553 of the Bankruptcy Code.

9.      Therefore, by this Setoff Assertion Notice, Flex hereby gives notice to the Debtor, the Trustee, and all other parties in interest in the Bankruptcy Case receiving this Setoff Assertion Notice via the CM/ECF system, that Flex hereby asserts and reserves in full its rights to setoff the Flex Account Payable against the Flex Damage Claim, together with any other or related setoff and/or other rights that Flex has or that may become available to Flex in connection therewith.

10.      In order to preserve its setoff rights, Flex further gives notice that Flex shall at this time continue to withhold payment of its Flex Account Payable.

11.      The filing and delivery of this Setoff Assertion Notice and Flex's continued withholding of payment of its Flex Account Payable are not intended to constitute, and shall not be deemed to constitute, a violation of the automatic stay under Section 362 of the Bankruptcy Code. In connection with filing this Setoff Assertion Notice, Flex intends to seek the Trustee's stipulated agreement, to be approved by entry of an appropriate order in this Bankruptcy Case,

permitting Flex to exercise and consummate its setoff rights as described herein.  In the event the Trustee and Flex cannot reach such a stipulated agreement, Flex will seek relief from the automatic stay by means of an appropriate request filed in the Bankruptcy Case, authorizing Flex to exercise and consummate its setoff rights as described herein.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, Flex respectfully requests that the Court enter appropriate order(s) preserving and confirming Flex's setoff rights as set forth in this Setoff Assertion Notice, and granting Flex such other and further relief as is just and proper.

Date: October 17, 2024
Wilmington, Delaware

BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP

*/s/ Kevin M. Capuzzi*
Kevin M. Capuzzi, Esq. (DE No. 5462)
1313 North Market Street, Suite 1201
Wilmington, DE  19801
(302) 442-7010
E-Mail:  kcapuzzi@beneschlaw.com

and

William E. Schonberg, Esq.
127 Public Square, Suite 4900
Cleveland, Ohio 44114
(216) 363-4500
E-Mail:  wschonberg@beneschlaw.com

*Attorneys for Flextronics Automotive USA, Inc.*

25036319 v2

## CERTIFICATE OF SERVICE

I hereby certify that on this the 17th day of October, 2024, a true and correct copy of *Flextronics Automotive USA, Inc.'s Notice Of Intent to Assert Setoff Rights* has been electronically filed with the Bankruptcy Court in the Debtor's Bankruptcy Case via the CM/ECF system, and will be served by electronic means through the CM/ECF system to all registered CM/ECF participants.

/s/ Kevin M. Capuzzi
Kevin M. Capuzzi, Esq. (DE No. 5462)

25036319 v2

## LINEAR  INVOICE #

| | | |
|---|---|---|
| INV20230703 | 03/11/2024 | 3,979.25 |
| INV20230861 | 04/24/2024 | 3,472.56 |
| INV20230838 | 04/25/2024 | 376.22 |
| INV20230839 | 04/25/2024 | 3,617.25 |
| INV20230840 | 04/25/2024 | 3,038.49 |
| INV20230841 | 04/25/2024 | 1,736.28 |
| INV20230842 | 04/25/2024 | 1,302.21 |

**TOTAL PAYMENT**   **$ 17,522.26**
**ON HOLD**

**ABOVE INVOICES ARE FOR FINISHED GOODS SHIPPED TO FLEX-COOPERSVILLE, MI FACILITY**



The Flex tooling is located at the following location:
**Linear AMS**
**CHARLOTTE FACILITY**
**400 Parkland Dr.**
**Charlotte, MI 48813**

| | FLEX PO # | | SUPPLIER INVOICE # | SUPPLIER QUOTE # | FLEX COMMENTS 10/2/2024 |
|---|---|---|---|---|---|
| The tool/fixtures involved are the following: | 75G001121 | | | 12022-FX2a | |
| 1-CAVITY INJECTION MOLD - Linear Tool #20109T FLEX P/N 4635075 IMBS CARRIER ASSEMBLY | $182,340.00 | PAID | 6874 | | FLEX HAS NOW TAKEN OWNERSHIP |
| 1 - ASSEMBLY FIXTURE - LINEAR ITEM # 20109F1 | $106,000.00 | PAID | 6983 | | FLEX HAS NOW TAKEN OWNERSHIP |
| 1 – INSPECTION FIXTURE - LINEAR ITEM #20109F2 | ✳ $36,500.00 | | 6874 | | LINEAR UNABLE TO LOCATE THIS ITEM / FLEX PAID FOR THIS ITEM |
| | TOTAL $324,840.00 | | | | |

| | FLEX PO # | | SUPPLIER INVOICE # | SUPPLIER QUOTE # | |
|---|---|---|---|---|---|
| | 75G001150 (PO LINE 10) | | | | |
| Total of 4 - inserts for the existing mold consisting of 2 inserts for the cavity half and 2 inserts for the core half | ✳ $26,200.00 | PAID | 20230678 | 2213 | LINEAR CLAIMS THIS WAS NEVER PRODUCED BUT FLEX PAID FOR THIS PO |
| | TOTAL $26,200.00 | | | | |

✳ Missing Flex-owned Equipment
(See Attached)

**EXHIBIT**



**A SHAPEWAYS COMPANY**

12163 Globe Street
Livonia, MI 48150-1142
734/422-6060

## Sales Quotation

| Date: | Quote #: |
|---|---|
| 12/2/2022 | 120222-FX2a |
| **PROJECT** | **TERMS** |
| C1V4 IBMS | see below |

| CUSTOMER INFO: | SHIP TO: |
|---|---|
| **FLEX**<br>27755 Stansbury, Suite 300<br>Farmington Hills, MI 48334<br>*Attn:  Joe Lubeski* | **FLEX**<br>27755 Stansbury, Suite 300<br>Farmington Hills, MI 48334 |

| | Description | QTY | L/T Weeks | Price | Total |
|---|---|---|---|---|---|
| 1 | *(North America )  --*     **\* Injection Mold tooling for C1V4 IBMS Carrier** | 1 | *12-14* | $  182,340.00 | $  182,340.00 |
| | - P20 tool steel with all work performed in North America | | | | |
| | - Quoted as a single-cavity / stand-alone injection mold | | | | |
| | - Part details formed by mechanical and hydraulic mold actions; standard pin plate ejection | | | | |
| | - Includes a 3-drop manifold for melt-flow delivery | | | | |
| | - Quotation includes a **Level III PPAP** and **(300)** molded parts | | | | |
| | - Tooling to support minumum 500K parts *(Years 2023, 24, 25, 26, 27, 2028 and Service Parts )* | | | | |
| | **CAD:**     IBMS CARRIER ASSEMBLY WIP 2022-10-20_stp.prt | | | | |
| | *\* Tooling Guaranteed to produce original release volumes, including 3% scrap, for Calendar Years 2023, 2024, 2025, 2026, 2027 and 2028.* | | | | |
| 2 | **ASSEMBLY FIXTURE** | 1 | *6-8* | $  106,000.00 | $  106,000.00 |
| | *Includes:*     Three-station assembly fixture with pneumatic press and rotary positioning.<br>Cameras/optics for verification of inserts/compression limiters.<br>All design/engineering hours and materials included<br>*\*Leadtime will run concurrent with tooling build leadtime* | | | | |
| 3 | **INSPECTION FIXTURE** | 1 | *6-8* | $  36,500.00 | $  36,500.00 |
| | *\*Leadtime will run concurrent with tooling build leadtime* | | | | |

*\* Missing Flat-Owned Equipment \**

| TERMS: | **TOOLING:**     30% with PO, 30% with receipt of first shots, 30% at part approval<br>**PARTS:**     Net 45 Days   *(LAMS will revisit terms after 4-6 months for 60 day considerations)* | TOTAL: | $  324,840.00 |
|---|---|---|---|



**Purchase Order**

**PO #: 75G001121**                                      **PO Date: 1/23/2023**

| Sold-To Address: | Ship-To Address: |
|---|---|
| **Flextronics Automotive USA, Inc.**<br>323 Skeels St<br><br>49404 ,Coopersville,<br>UNITED STATES<br><br>Flex Log Co. **750** | **Flextronics Automotive USA, Inc.**<br>323 Skeels St<br><br>49404 ,Coopersville,<br>UNITED STATES<br><br>WH code **750RW1** |
| Bill-To Address: | Supplier Address: |
| **Flextronics Automotive USA, Inc.**<br>323 Skeels St<br><br>49404,Coopersville,<br>UNITED STATES<br>38-2622745CP<br>Flex Fin Co. **750** | **Linear Mold & Engineering LLC**<br>12163 GLOBE ST<br><br>48150,LIVONIA,Michigan<br>UNITED STATES<br><br>BP code **750_SP0000374** |
| PO Number: 75G001121<br>PO Date: **1/23/2023**<br>aQuire Reference # REF1412439<br>GBS Buyer Name: **Kavinkumar N**<br>GBS Buyer email: **KavinkumarN.K@flex.com**<br>GBS Buyer Phone: | Supplier Contact: **David Myers**<br>Supplier email: **dmyers@linearams.com**<br>Supplier Phone:<br>Payment Term: **Net 45 Days**<br>Incoterm: **FREE ON BOARD**<br>Named Place of delivery: |

| PO Line | Flex Item Number | Quantity | UOM | Unit Price | Cur | Requested Delivery Date MM/DD/YYYY | Extended Amount | Tax Flag |
|---|---|---|---|---|---|---|---|---|
| 10 | Desc: **1-cav. inj. mold**<br>VPN: **NA**<br>Additional Info.: **INJ. MOLD TO PRODUCE P/N 4635022-01 IMBS CARRIER ASSEMBLY**<br>Requestor Name: **Lisa Rose**<br>aQuire Requisition: **REQ1449549**<br>Supplier Quote: **12022** | 1.00 | EA | 182340.00000 | USD | 1/25/2023 | 182,340.00 | No |
| 20 | Desc: **ASSEMBLY FIXTURE**<br>VPN: **NA**<br>Additional Info.:<br>Requestor Name: **Lisa Rose**<br>aQuire Requisition: **REQ1449549**<br>Supplier Quote: **12022-FLX1** | 1.00 | EA | 106000.00000 | USD | 1/25/2023 | 106,000.00 | No |
| 30 | Desc: INSPECTION FIXTURE | 1.00 | EA | 36500.00000 | USD | 1/25/2023 | 36,500.00 | No |

* Missing Flex-Owned Equipment



**Purchase Order**

**PO #: 75G001121**                                **PO Date: 1/23/2023**

| | VPN: **NA**<br>Additional Info.:<br>Requestor Name: **Lisa Rose**<br>aQuire Requisition: **REQ1449549**<br>Supplier Quote: | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|

| Discount Amount: 0 | Extended Amount: 324840.00 |
|---|---|

## Supplier instructions:

- Please indicate the Flex purchase order number, Flex item number, Country of origin and delivery term on all invoices.
- The requested delivery date indicated on the PO is the date the goods or services are required at Flex facility (this includes the transit time).
- Please take action on this PO in aQuire within 48 hours of order. Any delay might impact order status.
- Please use Flex routing guide for all USA sites accessible by clicking on this link:  Flex Site Routing Guides.  If routing guide is not available for a site, please contact the Buyer listed on the PO for instructions.  Invoices not following the Flex routing guide will get flagged and rejected by our AP system.

## STANDARD TERMS AND CONDITIONS OF PURCHASE

1. **ACCEPTANCE OF ORDER.** This Order is effective when Supplier accepts this Order either upon (i) Supplier acknowledging the Order, (ii) the 5th day after Supplier's receipt of the Order if Supplier does not expressly reject the Order, or (iii) Supplier's beginning performance under the Order. This purchase order ("Order") may be revoked at any time prior to Flex' receipt of written acceptance by Supplier. Flex expressly limits acceptance of this Order to the terms contained herein and Flex hereby rejects any different or additional terms contained in any prior written or oral communication or Supplier's response to this Order. To the extent that this Order might be treated as an acceptance of Supplier's prior offer, such acceptance is expressly made on condition of assent by Supplier to the terms hereof, and the shipment of the products covered by this Order ("Goods") or work performed by Supplier ("Services") shall constitute such assent. In addition to the other terms in this Order, this Order expressly includes all implied warranties and all of Flex', remedies set forth at law and in equity. Except where Flex and Supplier have agreed in writing otherwise, the terms of this Order are the sole and exclusive terms on which Flex agrees to be bound.

2. **DELIVERY.** Time is of the essence in this Order. Flex may charge Supplier for any loss or damage sustained as a result of Supplier's failure to deliver Goods or Services in accordance with the Order. Delivery of the Goods and performance of any Services shall be made pursuant to the lead times indicated in this Order, or according to the lead times negotiated between Flex and Supplier in writing, via the carrier if applicable, and to the place specified on the face hereof or any SOW governed by this PO unless changed by written instructions from Flex prior to shipment or performance. Supplier shall promptly inform Flex of any anticipated delay in shipment or performance. Flex reserves the right to return, shipping charges collect, all Goods received more than three (3) business days in advance of the specified delivery date or after the specified delivery date. If this Order calls for delivery in installments and Supplier fails to deliver an installment on the designated delivery date, Flex may decline to accept subsequent installments and terminate the balance of this Order.

3. **SHIPPING INSTRUCTIONS.** Unless otherwise specified on the face hereof, all Goods shall be packaged by Supplier in suitable containers to permit safe transportation and handling. Each delivered container must be labeled and marked to identify contents without opening, and all boxes and packages must contain packing sheets listing contents. Flex's purchase order number, as well as Flex's part number(s), must appear on all shipping containers, packing sheets, delivery tickets, and bills of lading. All Goods shall be shipped on carriers certified compliant with C-TPAT (Customs-Trade Partnership Against Terrorism).

4. **TITLE AND RISK OF LOSS.** Unless otherwise specified on this Order, Supplier shall deliver Goods DDP Flex's location designated on the face hereof (Incoterms 2020), at which time title and risk of loss on the Goods shall pass to Flex. If any of the ordered Goods are destroyed or materially damaged prior to the time risk of loss passes to Flex, Flex may cancel this Order as to those Goods and require Supplier to promptly deliver substitute equivalent Goods.

5. **PRICE AND PAYMENT.** The price to be paid by Flex for the Goods shall be that stated on the face hereof which is firm and may not be changed. Flex shall pay Supplier according to the end of month accumulation plus 90 days, payment on the next first Thursday (according to Flex payment calendar). Seller shall submit invoices by either Electronic Data Interchange or Vendor Portal. Requirements can be found on the following website: https://flex.com/supply-chain/supplier-information/supplier-information-e-commerce. Seller invoices must list only one Flex item number and one Flex purchase order number, unless the invoices are for maintenance, repair and operations items or bin stocking programs. Unless otherwise specified on the face hereof, the price of the Goods includes all shipping charges, taxes, VAT, duties and packaging. Personal property taxes assessable upon the Goods prior to the receipt by Flex shall be borne by Seller.



**Purchase Order**

## PO #: 75G001121

## PO Date: 1/23/2023

6. **INSPECTION.** Flex shall have thirty (30) days from the date of receipt of the Goods for inspection and acceptance testing. Without prejudice to any other rights Flex may have, any Goods not rejected during that initial 30-day period shall be deemed accepted.

7. **WARRANTIES.** Supplier warrants to Flex and its customers that (i) it shall perform all Services hereunder in a competent and professional manner in accordance with the terms of this Order, industry accepted standards and all applicable laws; (ii) the Goods are free of liens, new and unused, perform in accordance with all applicable specifications, including Supplier's or OEM published specifications; (iii) the Goods are free from defects in materials, workmanship, and design for a period of two (2) years from Flex' receipt of such Goods; and (iv) the Goods are not counterfeit and do not contain any unlawful or unauthorized reproduction, substitution, or alteration of items that have been mismarked, misidentified, or otherwise misrepresented to be authorized. Supplier further warrants it has the capability, experience, registrations, licenses, permits, and governmental approvals required to sell the Goods and perform the Services. Supplier will perform the Services in a timely, efficient, professional and workmanlike manner in accordance with the applicable Order and to Flex' satisfaction. Services include all incidental services and tasks necessary to perform the Order and provide acceptable Services. All Services shall be deemed "works made for hire". To the extent any of the Services are not deemed "works made for hire" by operation of law, Supplier hereby irrevocably assigns, transfers and conveys to Flex without further consideration all of its right, title and interest in such Services, including any related or accompanying documentation and any software or other goods necessary for the provisions of the Services, and all rights of patent, copyright, trade secret or other proprietary rights in such materials. Supplier acknowledges that Flex shall have the right to obtain and hold in their own name the intellectual property rights in and to such Services and software. Without limiting Flex' right to pursue any applicable remedies, Goods not meeting this warranty may in particular be returned to Supplier for credit or replacement at Supplier's expense, and at Flex' option, and Services not meeting this warranty shall be re-performed or fees reimbursed, at Flex' option. Excessive Failure: Should Goods shipped in any ninety (90)-day period to Flex or should all Goods cumulatively received by Flex experience a failure rate of the lesser of any defective-part-per-million specified in the Order or more than zero point three per cent (0.3% = 3000 DPPFM's) from the same defect or more than zero point five percent (0.5% = 5000 DPPM's) from cumulative defects, Supplier shall prepare a plan for diagnosing and addressing the problem and will be responsible for all costs incurred by Flex and its customers in rectifying such failures, including, without limitation, for engineering changes, testing and field-recovery costs, as well as for all damages.

8. **ITEMS FURNISHED BY FLEX.** Unless otherwise specified by Flex in writing, all designs, tools, patterns, drawings, data, materials, and equipment supplied to Supplier or paid for by Flex shall remain the property of Flex, shall be used only for making the Goods or performing the Services for Flex, shall be insured by Supplier at replacement value, and shall be returned to Flex in good condition upon completion of this Order. Supplier assumes all responsibility for the accuracy of tooling used in the production of the Goods or performance of Services, whether such tooling is fabricated by Supplier or furnished by Flex.

9. **INDEMNITY.** Supplier agrees to indemnify, defend and hold Flex and its customers harmless from and against any and all claims, actions, losses, expenses, damages, penalties, fines, liabilities and settlements arising from any actual, alleged or threatened third-party claims relating to (a) any infringement, counterfeit, misappropriation or violation on the part of Supplier's Goods or Services of any third party's patent, copyright, trade secret, mask work, trademark, trademark rights or any other intellectual property right, (b) personal injury or property damage caused by the Goods or Services, (c) defects in the Goods or Services which amount to a breach of Supplier's warranties in Section 7 or 15; (d) breach of Section 16, or (e) as a result of any negligent or reckless act or willful misconduct of the Supplier; (f) any claim by or on behalf of Supplier's subcontractors, third party suppliers, employees, or agents.

10. **CHANGES.** Flex may, by purchase order amendment issued to Supplier, change (a) the method of shipment or packing, (b) the drawings, designs, or specifications, (c) the place of delivery, or (d) the shipment date. Supplier shall promptly inform Flex of any modifications to the delivery schedule necessitated by the changes. If any Goods are designated non-cancelable/non-returnable ("NCNR"), Flex may reschedule the delivery of any NCNR Goods at any time up to the time of shipment for a period of up to ninety (90) days beyond the delivery date, and Flex shall not have any liability for any costs associated with such rescheduling. Within three (3) days from receipt of a purchase order amendment, Supplier shall notify Flex in writing of any increase or decrease in the cost of performance caused by a purchase order amendment and provide supporting documentation. Flex shall make an equitable adjustment in the Order to reflect valid cost variances due to the changes requested by Flex. Supplier shall advise Flex in writing of any foreseeable part shortages, and shall advise Flex not less than one (1) year in advance of any changes that might affect Supplier's ability to accept Flex' purchase orders.

11. **TERMINATION AND REMEDIES.** Flex may terminate this Order in whole or in part at any time by written notice to Supplier, even Orders in which Goods are designated as NCNR. Supplier will thereupon immediately (a) stop work on the cancelled Goods or Services; (b) notify its subcontractors to do likewise; (c) cancel orders for components for the cancelled Goods or Services; (d) return unneeded components for cancelled Goods to their suppliers or divert such components to jobs for other customers; and (e) otherwise mitigate all non-returnable, unneeded components for cancelled Goods or Services. Supplier shall not be entitled to compensation for cancelled Goods. Except for termination due to default or delay of Supplier, Supplier shall be entitled to commercially reasonable compensation for NCNR Goods on hand at the termination date as follows: Flex will purchase (a) finished Goods at the Order price, (b) work-in-process Goods at a reasonable pro-rata percentage of the finished Goods Order price and (c) custom components for the cancelled Goods, which Supplier properly ordered and was not able to cancel, return, or otherwise mitigate using diligent efforts within ninety (90) days after cancellation, at Supplier's cost for such custom components. The total compensation paid by Flex for such cancellation shall not exceed the price on the Order for the cancelled Goods. In the event that Flex breaches its obligations under this Order, and fails to cure within a commercially reasonable time after receiving written notice of such default, Supplier's sole and exclusive remedy shall be to receive direct damages for the Goods in question as if such Goods were cancelled, computed in the manner set forth in the fourth sentence of this section. In no event shall Supplier be entitled to indirect, incidental, consequential, special, or punitive damages or loss of profit, for Flex's breach of the terms and conditions of this Order, or for any other act or omission occurring as a result of Flex' breach of its performance obligations under this Order. Supplier shall not cancel, terminate, or otherwise decommit to an accepted Order.

12. **WAIVER.** No claim or right arising out of the breach of this Order by Supplier can be discharged by a waiver by Flex unless the waiver is supported by consideration and is in writing signed by Flex.

13. **ASSIGNMENT.** Supplier shall not assign its rights or obligations under this Order without the advance written consent of Flex. Flex may assign its rights under this Order to a subsidiary or affiliate upon written notice to Supplier.

14. **CONFIDENTIALITY.** Neither party shall, without first obtaining the other's written permission, advertise, publish, or disclose the terms, details, pricing or specifications of this Order, the amount of revenue generated or to be generated from this Order, nor will either party communicate the fact that Supplier has furnished or has contracted to furnish Flex with the Goods or Services. Both parties agree to maintain in confidence those materials and information either has designated as being confidential or proprietary information.



**Purchase Order**

**PO #: 75G001121**

**PO Date: 1/23/2023**

15. **QUALITY REQUIREMENTS.** Supplier shall comply, and shall cause all Goods and Services to comply, with all applicable quality requirements set forth at https://flex.com/supply-chain/supplier-information/supplier-information-supplier-quality, which are incorporated into this Order.

16. **COMPLIANCE WITH LAWS.** Supplier shall comply with all applicable laws concerning the materials content and the manufacture and distribution of Goods and performance of Services, and shall ensure that its activities in performance of this Order in connection with this Order shall not cause Flex to be in violation of any laws, including without limitation applicable import or export laws, packaging regulations including the ISPM 15 "Requirements of Wood Packaging Materials", social responsibility code of conduct requirements (including, upon request, submission of compliance proof to the RBA requirement through either submission of a self-assessment questionnaire administered by either a 3rd party affiliated with the RBA organization or Flex), and any applicable supply chain security guidelines of the countries in which Flex conducts business. **U.S. Government Contracting**: Where the Goods or Services being procured from Supplier are in support of a U.S. government contract or end-customer, the supplemental terms and condition at https://flex.com/supply-chain/supplier-information shall apply to this Order. **Social Responsibility:** Supplier agrees to comply with the Responsible Business Alliance Code of Conduct ("RBA") found at: http://www.responsiblebusiness.org. **Anti-Terrorism Security Measures:** Supplier warrants it is in compliance with and will cause each of its subcontractors and suppliers to comply with (1) all applicable laws relating to anti-terrorism security measures and (2) all Supply Chain Security guidelines as defined by the importing country, including but not limited to: C-TPAT (Customs-Trade Partnership Against Terrorism) as published by the United States, the STP (Secure Trade Program) as published by Singapore, and the AEO (Authorized Economic Operator) as published by the European Union. Supplier warrants that all eligible locations shipping to Flex are registered to all applicable Known Shipper programs. **Anti-Corruption Measures:** Supplier warrants that in supplying any Goods and performing any work under this Order, Supplier, its affiliates and agents have not and will not pay, offer or promise to pay, or authorize the payment, directly or indirectly, of any money or anything of value to any government official, government employee, political party or candidate for political office for the purpose of influencing any act or decision of such person or of the government to obtain or retain business, or direct business to any person or business. Supplier further warrants it, its affiliates and its agents have not and will not pay, offer or promise to pay, or authorize the payment directly or indirectly, of any money or anything of value to any employee of Flex to obtain or retain business. Supplier agrees to report any suspected violation of the RBA Code of Conduct to Flex at: https://secure.ethicspoint.com/domain/media/en/gui/17667/index.html. Supplier shall and shall ensure that its personnel comply with Flex's Code of Conduct, policies, procedures and requirements.

17. **DISPUTE RESOLUTION.** Any dispute arising out of or relating to this Order shall be settled by binding arbitration under the applicable rules and procedures of the arbitration bodies listed as follows. This clause shall not preclude parties from seeking provisional remedies from a court of appropriate jurisdiction. For any Flex buying entity incorporated in the Americas, California laws apply, excluding those portions relating to conflicts of laws. Disputes will be settled before JAMS ("JAMS"), with the mandatory site for arbitration in San Jose, California. For any Flex buying entity incorporated in China, the laws of the People's Republic of China apply and disputes will be settled before the China International Economic and Trade Arbitration Commission ("CIETAC"), with the mandatory site for arbitration in Beijing. For any Flex buying entity incorporated in North Asia (excluding China), the laws of the Special Administrative Region of Hong Kong apply and disputes will be settled before the Hong Kong International Arbitration Centre ("HKIAC"), with the mandatory site for arbitration in Hong Kong. For any Flex buying entity incorporated in South Asia or South East Asia, Singapore laws apply and disputes will be settled before the Singapore International Arbitration Centre ("SIAC"), with the mandatory site for arbitration in Singapore. For any Flex buying entity incorporated in the Europe, Middle East, and Africa (EMEA) regions, the laws of Austria apply, excluding those portions relating to conflicts of laws, and all disputes arising out of or in connection with the Order shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by three arbitrators appointed in accordance with the said Rules, with the mandatory site for arbitration in Vienna, Austria. The United National Convention on Contracts for the International Sale of Goods shall not apply. To the extent that a court of competent jurisdiction or arbitral panel reasonably determines that a local law must apply (notwithstanding the express choices of law described in this Section 17), the parties agree and acknowledge that the application of such local law shall be limited in scope and narrowly tailored to apply in a limited context, and that thereafter all disputes shall be otherwise governed by this Section 17 as well as by the express arbitration provisions set forth herein. The language of arbitration shall in all cases be English. The parties hereby knowingly and voluntarily, and having had an opportunity to consult with counsel, waive all rights to trial by jury.

18. **INSURANCE.** Supplier shall provide insurance at not less than the following limits: Commercial General Liability (Primary and Umbrella/Excess):$5,000,000 per occurrence and in the aggregate; Workers' Compensation Insurance in compliance with law; Auto Liability Insurance: $1,000,000; A Fidelity Bond or policy of Crime Insurance: $1,000,000 covering loss of Flex or Flex's customer funds, property, or assets, including electronic data and assets, in Supplier's care, custody, or control and caused by a dishonest act on the part of an employee of Supplier; Professional Liability Insurance (Errors & Omissions): $2,000,000 per occurrence and $2,000,000 in the aggregate. Supplier shall furnish to Flex copies of the certificates of insurance. Where permitted by law, such policies shall contain waivers of the insurer's right of subrogation against Flex, its subsidiaries, officers, directors, and employees, and shall list Flex as an additional insured.

19. **AUDIT.** During the term of this Order and for a period of three (3) years after termination, Flex may, at its discretion, perform or have performed an inspection and audit of Supplier's facilities, books, financial records and Supplier's data privacy and information security program to verify Supplier's compliance with the terms of this Agreement and with Flex's Supplier security requirements. In lieu of Supplier security requirements audit, upon Flex's request, Supplier shall complete, within thirty (30 days) of receipt, an audit questionnaire provided by Flex.

20. **INTENDED BENEFICIARIES.** Supplier agrees that Flex customers are intended "creditor" beneficiaries of Sections 7 9, 15, and 16.

21. **INTERPRETATION.** As a result of accepting Flex' Order, Supplier acknowledges that this Order, including the provisions on its face, contains the entire agreement between the parties concerning the purchase and sale of the Goods or provision of Services, unless the parties have otherwise negotiated and executed an overriding agreement, in which case the terms in such agreement shall take precedence. Except to the extent Flex has relied upon statements and writings of Supplier and Supplier's agents in connection with this Order, there are no oral understandings, representations, or agreements relative to this Order which are not fully expressed herein.

Standard Terms and Conditions of Purchase Rev.: R

• • •

# Invoice

| Date | Invoice # |
|---|---|
| 3/6/2024 | INV20230678 |

**Shapeways, Inc**

Shapeways, Inc
12163 GLOBE STREET
LIVONIA MI 48150

| Bill To | Ship To |
|---|---|
| Flex<br>27755 Stansbury Blvd<br>Suite 300<br>Farmington Hills MI 48334<br>United States | Flextronics Automotive USA, Inc.<br>Flex<br>323 Skeels St<br>Coopersville MI 49404<br>United States |

| Terms | Due Date | PO # | Shipping Met... | Ship Date | Tracking # |
|---|---|---|---|---|---|
| Net 30 | 4/5/2024 | 75G001150 | | 3/5/2024 | |

| | FOB | Project | Sales Rep | Partner | Internal Order |
|---|---|---|---|---|---|

| Item | Quantity | Units | Inventory Detail | Description | Unit Price | Amount | Sales O... |
|---|---|---|---|---|---|---|---|
| *4635022-01 IBMS CARRIER ASSEMBLY | 1 | EA | | | 26,200.00 | 26,200.00 | |

| | | Total | $26,200.00 |
|---|---|---|---|

\* Missing Flex-Owned Equipment

INV20230678



**Purchase Order**

**PO #: 75G001150**                                          **PO Date: 2/28/2023**

| Sold-To Address: | Ship-To Address: |
|---|---|
| **Flextronics Automotive USA, Inc.**<br>323 Skeels St<br><br>49404 ,Coopersville,<br>UNITED STATES<br><br>Flex Log Co. **750** | **Flextronics Automotive USA, Inc.**<br>323 Skeels St<br><br>49404 ,Coopersville,<br>UNITED STATES<br><br>WH code **750RW1** |
| Bill-To Address:<br>**Flextronics Automotive USA, Inc.**<br>323 Skeels St<br><br>49404,Coopersville,<br>UNITED STATES<br>38-2622745CP<br>Flex Fin Co. **750** | Supplier Address:<br>**Linear Mold & Engineering LLC**<br>12163 GLOBE ST<br><br>48150,LIVONIA,Michigan<br>UNITED STATES<br><br>BP code **750_SP0000374** |
| PO Number: 75G001150<br>PO Date: **2/28/2023**<br>aQuire Reference # **REF1463498**<br>GBS Buyer Name: **Kavinkumar N**<br>GBS Buyer email: **KavinkumarN.K@flex.com**<br>GBS Buyer Phone: | Supplier Contact: **David Myers**<br>Supplier email: **dmyers@linearams.com**<br>Supplier Phone:<br>Payment Term: **Net 45 Days**<br>Incoterm: **FREE ON BOARD**<br>Named Place of delivery: |

| PO Line | Flex Item Number | Quantity | UOM | Unit Price | Cur | Requested Delivery Date MM/DD/YYYY | Extended Amount | Tax Flag |
|---|---|---|---|---|---|---|---|---|
| 10 | Desc: **P/N 4635022-01 IBMS CARRIER ASSEMBLY**<br>VPN: **4635022-01**<br>Additional Info.: **P/N 4635022-01 IBMS CARRIER ASSEMBLY**<br>**Additional cost to manufacture 4 inserts to the existing mold to make provisions for warpage**<br>**2 inserts for the cavity half and 2 inserts for the core half**<br>**Total Cost: $26,200.00 – due date 05/12/2023**<br>Requestor Name: **Shannon Carroll**<br>aQuire Requisition: **REQ1502240**<br>Supplier Quote: | **1.0000** | EA | **26200.000 00** | USD | **3/1/2023** | **26,200.0 0** | No |
| 20 | Desc: **Machining, Spotting, Insert** | **1.0000** | EA | **50475.000 00** | USD | **3/1/2023** | **50,475.0 0** | No |

*Missing Flex- Owned Equipment* ∴ 1



**Purchase Order**

**PO #: 75G001150**

**PO Date: 2/28/2023**

| | Adjustment<br>VPN: **Insert Adj. Machining**<br>Additional Info.: **Machining, spotting, hand working the inserts with the Warpage adjustment**<br>**Total Cost: $50,475.00 – due date 07/07/2023**<br>Requestor Name: **Shannon Carroll**<br>aQuire Requisition: **REQ1502240**<br>Supplier Quote: | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|

| | |
|---|---|
| Discount Amount: 0 | Extended Amount: 76675.00 |

## Supplier instructions:

- Please indicate the Flex purchase order number, Flex item number, Country of origin and delivery term on all invoices.
- The requested delivery date indicated on the PO is the date the goods or services are required at Flex facility (this includes the transit time).
- Please take action on this PO in aQuire within 48 hours of order. Any delay might impact order status.
- Please use Flex routing guide for all USA sites accessible by clicking on this link: Flex Site Routing Guides. If routing guide is not available for a site, please contact the Buyer listed on the PO for instructions. Invoices not following the Flex routing guide will get flagged and rejected by our AP system.

## STANDARD TERMS AND CONDITIONS OF PURCHASE

1. **ACCEPTANCE OF ORDER.** This Order is effective when Supplier accepts this Order either upon (i) Supplier acknowledging the Order, (ii) the 5th day after Supplier's receipt of the Order if Supplier does not expressly reject the Order, or (iii) Supplier's beginning performance under the Order. This purchase order ("Order") may be revoked at any time prior to Flex' receipt of written acceptance by Supplier. Flex expressly limits acceptance of this Order to the terms contained herein and Flex hereby rejects any different or additional terms contained in any prior written or oral communication or Supplier's response to this Order. To the extent that this Order might be treated as an acceptance of Supplier's prior offer, such acceptance is expressly made on condition of assent by Supplier to the terms hereof, and the shipment of the products covered by this Order ("Goods") or work performed by Supplier ("Services") shall constitute such assent. In addition to the other terms in this Order, this Order expressly includes all implied warranties and all of Flex' remedies set forth at law and in equity. Except where Flex and Supplier have agreed in writing otherwise, the terms of this Order are the sole and exclusive terms on which Flex agrees to be bound.

2. **DELIVERY.** Time is of the essence in this Order. Flex may charge Supplier for any loss or damage sustained as a result of Supplier's failure to deliver Goods or Services in accordance with the Order. Delivery of the Goods and performance of any Services shall be made pursuant to the lead times indicated in this Order, or according to the lead times negotiated between Flex and Supplier in writing, via the carrier if applicable, and to the place specified on the face hereof or any SOW governed by this PO unless changed by written instructions from Flex prior to shipment or performance. Supplier shall promptly inform Flex of any anticipated delay in shipment or performance. Flex reserves the right to return, shipping charges collect, all Goods received more than three (3) business days in advance of the specified delivery date or after the specified delivery date. If this Order calls for delivery in installments and Supplier fails to deliver an installment on the designated delivery date, Flex may decline to accept subsequent installments and terminate the balance of this Order.

3. **SHIPPING INSTRUCTIONS.** Unless otherwise specified on the face hereof, all Goods shall be packaged by Supplier in suitable containers to permit safe transportation and handling. Each delivered container must be labeled and marked to identify contents without opening, and all boxes and packages must contain packing sheets listing contents. Flex's purchase order number, as well as Flex's part number(s), must appear on all shipping containers, packing sheets, delivery tickets, and bills of lading. All Goods shall be shipped on carriers certified compliant with C-TPAT (Customs-Trade Partnership Against Terrorism).

4. **TITLE AND RISK OF LOSS.** Unless otherwise specified on this Order, Supplier shall deliver Goods DDP Flex's location designated on the face hereof (Incoterms 2020), at which time title and risk of loss on the Goods shall pass to Flex. If any of the ordered Goods are destroyed or materially damaged prior to the time risk of loss passes to Flex, Flex may cancel this Order as to those Goods and require Supplier to promptly deliver substitute equivalent Goods.



**Purchase Order**

## PO #: 75G001150

## PO Date: 2/28/2023

5. **PRICE AND PAYMENT.** The price to be paid by Flex for the Goods shall be that stated on the face hereof which is firm and may not be changed. Flex shall pay Supplier according to the end of month accumulation plus 90 days, payment on the next first Thursday (according to Flex payment calendar) unless otherwise specified on the face hereof. Seller shall submit invoices by either Electronic Data Interchange or Vendor Portal. Requirements can be found on the following website: https://flex.com/supply-chain/supplier-information/supplier-information-e-commerce. Seller invoices must list only one Flex item number and one Flex purchase order number, unless the invoices are for maintenance, repair and operations items or bin stocking programs. Unless otherwise specified on the face hereof, the price of the Goods includes all shipping charges, taxes, VAT, duties and packaging. Personal property taxes assessable upon the Goods prior to the receipt by Flex shall be borne by Seller.

6. **INSPECTION.** Flex shall have thirty (30) days from the date of receipt of the Goods for inspection and acceptance testing. Without prejudice to any other rights Flex may have, any Goods not rejected during that initial 30-day period shall be deemed accepted.

7. **WARRANTIES.** Supplier warrants to Flex and its customers that (i) it shall perform all Services hereunder in a competent and professional manner in accordance with the terms of this Order, industry accepted standards and all applicable laws; (ii) the Goods are free of liens, new and unused, perform in accordance with all applicable specifications, including Supplier's or OEM published specifications; (iii) the Goods are free from defects in materials, workmanship, and design for a period of two (2) years from Flex' receipt of such Goods; (iv) the Goods are not counterfeit and do not contain any unlawful or unauthorized reproduction, substitution, or alteration of items that have been mismarked, misidentified, or otherwise misrepresented to be authorized ; and (v) the Goods have not been produced, either by the Supplier, its affiliates, Supplier's vendors, subcontractors, agents and any other third party at any level using any form of convict, indentured, or forced labor, and do not contain any inputs produced with such labor. For the Goods that may be imported into the United States, Supplier represents and warrants that such Goods do not contain any inputs that could trigger U.S. import restrictions. Supplier shall, and shall ensure that its subcontractors, vendor, agent or any third party complies with Flex's Supplier Code of Conduct which can be found here Supplier Code of Conduct. Further, Supplier warrants that it shall take commercially reasonable steps in ensuring that its suppliers, vendor, agent or any third party comply with Flex's Supplier Code of Conduct and the RBA (further defined in Section 16 of this Order). Supplier further warrants it has the capability, experience, registrations, licenses, permits, and governmental approvals required to sell the Goods and perform the Services. Supplier will perform the Services in a timely, efficient, professional and workmanlike manner in accordance with the applicable Order and to Flex' satisfaction. Services include all incidental services and tasks necessary to perform the Order and provide acceptable Services. All Services shall be deemed "works made for hire". To the extent any of the Services are not deemed "works made for hire" by operation of law, Supplier hereby irrevocably assigns, transfers and conveys to Flex without further consideration all of its right, title and interest in such Services, including any related or accompanying documentation and any software or other goods necessary for the provisions of the Services, and all rights of patent, copyright, trade secret or other proprietary rights in such materials. Supplier acknowledges that Flex shall have the right to obtain and hold in their own name the intellectual property rights in and to such Services and software. Without limiting Flex' right to pursue any applicable remedies, Goods not meeting this warranty may in particular be returned to Supplier for credit or replacement at Supplier's expense, and at Flex' option, and Services not meeting this warranty shall be re-performed or fees reimbursed, at Flex' option. Excessive Failure: Should Goods shipped in any ninety (90)-day period to Flex or should all Goods cumulatively received by Flex experience a failure rate of the lesser of any defective-part-per-million specified in the Order or more than zero point three per cent (0.3% = 3000 DPPFM's) from the same defect or more than zero point five percent (0.5% = 5000 DPPM's) from cumulative defects, Supplier shall prepare a plan for diagnosing and addressing the problem and will be responsible for all costs incurred by Flex and its customers in rectifying such failures, including, without limitation, for engineering changes, testing and field-recovery costs, as well as for all damages.

8. **ITEMS FURNISHED BY FLEX.** Unless otherwise specified by Flex in writing, all designs, tools, patterns, drawings, data, materials, and equipment supplied to Supplier or paid for by Flex shall remain the property of Flex, shall be used only for making the Goods or performing the Services for Flex, shall be insured by Supplier at replacement value, and shall be returned to Flex in good condition upon completion of this Order. Supplier assumes all responsibility for the accuracy of tooling used in the production of the Goods or performance of Services, whether such tooling is fabricated by Supplier or furnished by Flex.

9. **INDEMNITY.** Supplier agrees to indemnify, defend and hold Flex and its customers harmless from and against any and all claims, actions, losses, expenses, damages, penalties, fines, liabilities and settlements arising from any actual, alleged or threatened third-party claims relating to (a) any infringement, counterfeit, misappropriation or violation on the part of Supplier's Goods or Services of any third party's patent, copyright, trade secret, mask work, trademark, trademark rights or any other intellectual property right, (b) personal injury or property damage caused by the Goods or Services, (c) defects in the Goods or Services which amount to a breach of Supplier's warranties in Section 7 or 15; (d) breach of Section 16, or (e) as a result of any negligent or reckless act or willful misconduct of the Supplier; (f) any claim by or on behalf of Supplier's subcontractors, third party suppliers, employees, or agents.

10. **CHANGES.** Flex may, by purchase order amendment issued to Supplier, change (a) the method of shipment or packing, (b) the drawings, designs, or specifications, (c) the place of delivery, or (d) the shipment date. Supplier shall promptly inform Flex of any modifications to the delivery schedule necessitated by the changes. If any Goods are designated non-cancelable/non-returnable ("NCNR"), Flex may reschedule the delivery of any NCNR Goods at any time up to the time of shipment for a period of up to ninety (90) days beyond the delivery date, and Flex shall not have any liability for any costs associated with such rescheduling. Within three (3) days from receipt of a purchase order amendment, Supplier shall notify Flex in writing of any increase or decrease in the cost of performance caused by a purchase order amendment and provide supporting documentation. Flex shall make an equitable adjustment in the Order to reflect valid cost variances due to the changes requested by Flex. Supplier shall advise Flex in writing of any foreseeable part shortages and shall advise Flex not less than one (1) year in advance of any changes that might affect Supplier's ability to accept Flex' purchase orders.

11. **TERMINATION AND REMEDIES.** Flex may terminate this Order in whole or in part at any time by written notice to Supplier, even Orders in which Goods are designated as NCNR. Supplier will thereupon immediately (a) stop work on the cancelled Goods or Services; (b) notify its subcontractors to do likewise; (c) cancel orders for components for the cancelled Goods or Services; (d) return unneeded components for cancelled Goods to their suppliers or divert such components to jobs for other customers; and (e) otherwise mitigate all non-returnable, unneeded components for cancelled Goods or Services. Supplier shall not be entitled to compensation for cancelled Goods. Except for termination due to default or delay of Supplier, Supplier shall be entitled to commercially reasonable compensation for NCNR Goods on hand at the termination date as follows: Flex will purchase (a) finished Goods at the Order price, (b) work-in-process Goods at a reasonable pro-rata percentage of the finished Goods Order price and (c) custom components for the cancelled Goods, which Supplier properly ordered and was not able to cancel, return, or otherwise mitigate using diligent efforts within ninety (90) days after cancellation, at Supplier's cost for such custom components. The total compensation paid by Flex for such cancellation shall not exceed the price on the Order for the cancelled Goods. In the event that Flex breaches its obligations under this Order, and fails to cure within a commercially reasonable time after receiving written notice of such



**Purchase Order**

## PO #: 75G001150

## PO Date: 2/28/2023

default, Supplier's sole and exclusive remedy shall be to receive direct damages for the Goods in question as if such Goods were cancelled, computed in the manner set forth in the fourth sentence of this section. In no event shall Supplier be entitled to indirect, incidental, consequential, special, or punitive damages or loss of profit, for Flex's breach of the terms and conditions of this Order, or for any other act or omission occurring as a result of Flex' breach of its performance obligations under this Order. Supplier shall not cancel, terminate, or otherwise decommit to an accepted Order.

**12. WAIVER.** No claim or right arising out of the breach of this Order by Supplier can be discharged by a waiver by Flex unless the waiver is supported by consideration and is in writing signed by Flex.

**13. ASSIGNMENT.** Supplier shall not assign its rights or obligations under this Order without the advance written consent of Flex. Flex may assign its rights under this Order to a subsidiary or affiliate upon written notice to Supplier.

**14. CONFIDENTIALITY.** Neither party shall, without first obtaining the other's written permission, advertise, publish, or disclose the terms, details, pricing or specifications of this Order, the amount of revenue generated or to be generated from this Order, nor will either party communicate the fact that Supplier has furnished or has contracted to furnish Flex with the Goods or Services. Both parties agree to maintain in confidence those materials and information either has designated as being confidential or proprietary information.

**15. QUALITY REQUIREMENTS.** Supplier shall comply, and shall cause all Goods and Services to comply, with all applicable quality requirements set forth at https://flex.com/supply-chain/supplier-information/supplier-information-supplier-quality, which are incorporated into this Order.

**16. COMPLIANCE WITH LAWS.** Supplier shall comply with all applicable laws concerning the materials content and the manufacture and distribution of Goods and performance of Services, and shall ensure that its activities in performance of this Order in connection with this Order shall not cause Flex to be in violation of any laws, including without limitation applicable import or export laws, packaging regulations including the ISPM 15 "Requirements of Wood Packaging Materials", social responsibility code of conduct requirements (including, upon request, submission of compliance proof to the RBA requirement through either submission of a self-assessment questionnaire administered by either a 3rd party affiliated with the RBA organization or Flex), and any applicable supply chain security guidelines of the countries in which Flex conducts business. **U.S. Government Contracting:** Where the Goods or Services being procured from Supplier are in support of a U.S. government contract or end-customer, the supplemental terms and condition at https://flex.com/supply-chain/supplier-information shall apply to this Order. **Social Responsibility:** Supplier agrees to comply with the Responsible Business Alliance Code of Conduct ("RBA") found at: http://www.responsiblebusiness.org. **Anti-Terrorism Security Measures:** Supplier warrants it is in compliance with and will cause each of its subcontractors and suppliers to comply with (1) all applicable laws relating to anti-terrorism security measures and (2) all Supply Chain Security guidelines as defined by the importing country, including but not limited to: C-TPAT (Customs-Trade Partnership Against Terrorism) as published by the United States, the STP (Secure Trade Program) as published by Singapore, the Malaysia Strategic Trade Act 2010 (STA) and the AEO (Authorized Economic Operator) as published by the European Union. Supplier warrants that all eligible locations shipping to Flex are registered to all applicable Known Shipper programs. **Anti-Corruption Measures:** Supplier warrants that in supplying any Goods and performing any work under this Order, Supplier, its affiliates and agents have not and will not pay, offer or promise to pay, or authorize the payment, directly or indirectly, of any money or anything of value to any government official, government employee, political party or candidate for political office for the purpose of influencing any act or decision of such person or of the government to obtain or retain business, or direct business to any person or business. Supplier further warrants it, its affiliates and its agents have not and will not pay, offer or promise to pay, or authorize the payment directly or indirectly, of any money or anything of value to any employee of Flex to obtain or retain business. Supplier agrees to report any suspected violation of the RBA Code of Conduct to Flex at: https://secure.ethicspoint.com/domain/media/en/gui/17667/index.html. Supplier shall comply with Flex's Supplier Code of Conduct, policies, procedures and requirements. **Information Security Measure:** Supplier shall comply with Flex's Information Security Guidelines for Suppliers. Supplier shall cause its affiliates, directors, employees, personnel, contractors, agents and authorized representatives to comply with the requirements set out in this Section 16.

**17. DISPUTE RESOLUTION.** Any dispute arising out of or relating to this Order shall be settled by binding arbitration under the applicable rules and procedures of the arbitration bodies listed as follows. This clause shall not preclude parties from seeking provisional remedies from a court of appropriate jurisdiction. For any Flex buying entity incorporated in the Americas, California laws apply, excluding those portions relating to conflicts of laws. Disputes will be settled before JAMS ("JAMS"), with the mandatory site for arbitration in San Jose, California. For any Flex buying entity incorporated in China, the laws of the People's Republic of China apply and disputes will be settled before the China International Economic and Trade Arbitration Commission ("CIETAC"), with the mandatory site for arbitration in Beijing. For any Flex buying entity incorporated in North Asia (excluding China), the laws of the Special Administrative Region of Hong Kong apply and disputes will be settled before the Hong Kong International Arbitration Centre ("HKIAC"), with the mandatory site for arbitration in Hong Kong. For any Flex buying entity incorporated in South Asia or South East Asia, Singapore laws apply and disputes will be settled before the Singapore International Arbitration Centre ("SIAC"), with the mandatory site for arbitration in Singapore. For any Flex buying entity incorporated in the Europe, Middle East, and Africa (EMEA) regions, the laws of Austria apply, excluding those portions relating to conflicts of laws, and all disputes arising out of or in connection with the Order shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by three arbitrators appointed in accordance with the said Rules, with the mandatory site for arbitration in Vienna, Austria. The United National Convention on Contracts for the International Sale of Goods shall not apply. To the extent that a court of competent jurisdiction or arbitral panel reasonably determines that a local law must apply (notwithstanding the express choices of law described in this Section 17), the parties agree and acknowledge that the application of such local law shall be limited in scope and narrowly tailored to apply in a limited context, and that thereafter all disputes shall be otherwise governed by this Section 17 as well as by the express arbitration provisions set forth herein. The language of arbitration shall in all cases be English. The parties hereby knowingly and voluntarily, and having had an opportunity to consult with counsel, waive all rights to trial by jury.

**18. INSURANCE.** Supplier shall provide insurance at not less than the following limits: Commercial General Liability (Primary and Umbrella/Excess):$5,000,000 per occurrence and in the aggregate; Workers' Compensation Insurance in compliance with law; Auto Liability Insurance: $1,000,000; A Fidelity Bond or policy of Crime Insurance: $1,000,000 covering loss of Flex or Flex's customer funds, property, or assets, including electronic data and assets, in Supplier's care, custody, or control and caused by a dishonest act on the part of an employee of Supplier; Professional Liability Insurance (Errors & Omissions): $2,000,000 per occurrence and $2,000,000 in the aggregate. Supplier shall furnish to Flex copies of the certificates of insurance. Where permitted by law, such policies shall contain waivers of the insurer's right of subrogation against Flex, its subsidiaries, officers, directors, and employees, and shall list Flex as an additional insured.

**19. AUDIT.** During the term of this Order and for a period of three (3) years after termination, Flex may, at its discretion, perform or have performed an inspection and audit of Supplier's facilities, books, financial records and Supplier's data privacy and information security program to verify Supplier's



**Purchase Order**

**PO #: 75G001150**                                         **PO Date: 2/28/2023**

compliance with the terms of this Order and with Flex's Supplier security requirements. In lieu of Supplier security requirements audit, upon Flex's request, Supplier shall complete, within thirty (30 days) of receipt, an audit questionnaire provided by Flex.

20. **INTENDED BENEFICIARIES**. Supplier agrees that Flex customers are intended "creditor" beneficiaries of Sections 7, 9, 15, and 16.

21. **INTERPRETATION**. As a result of accepting Flex' Order, Supplier acknowledges that this Order, including the provisions on its face, contains the entire agreement between the parties concerning the purchase and sale of the Goods or provision of Services, unless the parties have otherwise negotiated and executed an overriding agreement, in which case the terms in such agreement shall take precedence. Except to the extent Flex has relied upon statements and writings of Supplier and Supplier's agents in connection with this Order, there are no oral understandings, representations, or agreements relative to this Order which are not fully expressed herein.

Standard Terms and Conditions of Purchase Rev.: T